## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| DEBORAH FRITTS, KRISTINA BAKER, and YVONNE SHINN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LOCKTON, INC.,<br><br>Defendant. | )<br>)<br>)  CIVIL ACTION NO.:<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CLASS ACTION COMPLAINT

Plaintiffs, Deborah Fritts, Kristina Baker, and Yvonne Shinn ("Plaintiffs"), by and through their attorneys, on behalf of the Lockton, Inc. 401(k) Plan (the "Plan"),[1] themselves and all others similarly situated, state and allege as follows:

## I.      INTRODUCTION

1.      This is a class action brought pursuant to §§ 409 and 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1109 and 1132, against the Plan's fiduciary, Lockton, Inc. ("Lockton" or the "Company"), for breaches of its fiduciary duties.

2.      The Plan is a defined contribution retirement plan or a 401(k) plan, established pursuant to 29 U.S.C. § 1002(2)(A) and § 1002(34) of ERISA, that enables eligible participants to make tax-deferred contributions from their salaries to the Plan. *See* Summary Plan Description for the Lockton, Inc. 401(k) Plan ("SPD"), at 27 ("[T]he plan is a defined contribution plan…"); *see also id.*, at 28 ("**Type of Plan** Defined Contribution 401(k) Profit Sharing Plan"); Independent

---

[1] The Plan is a legal entity that can sue and be sued. ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1). However, in a breach of fiduciary duty action such as this, the Plan is not a party. Rather, pursuant to ERISA § 409, and the law interpreting it, the relief requested in this action is for the benefit of the Plan and its participants.

Auditor's Report ("Auditor's Report"), attached to 2024 Form 5500 for the Plan, at 8 ("The Plan is a defined contribution plan established for the benefit of eligible employees of Lockton, Inc. and other related employers (collectively, the Company), as defined in the Plan Agreement.").

3. Like other companies that sponsor 401(k) plans for their employees, Lockton enjoys both direct and indirect benefits by providing matching contributions to the Plan participants. Employers are generally permitted to take tax deductions for their contributions to 401(k) plans at the time when the contributions are made. *See generally,* https:/www.irs.gov/retirement-plans/plan-sponsor/401k-plan-overview. However, Defendant has not followed ERISA's standard of care. This lawsuit is filed after careful review of publicly available documents to return benefits taken from Plan participants by Defendant.

4. To safeguard Plan participants and beneficiaries, ERISA imposes strict fiduciary duties of loyalty and prudence upon employers and other plan fiduciaries. Fiduciaries must act "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1)(A), with the "care, skill, prudence, and diligence" that would be expected in managing a plan of similar scope. 29 U.S.C. § 1104(a)(1)(B). These twin fiduciary duties are "the highest known to the law." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009).

5. The Department of Labor ("DOL") has explicitly stated that employers are held to a "high standard of care and diligence" and must, among other duties, both "establish a prudent process for selecting investment options and service providers," including providers of the Plan's administrative and recordkeeping ("RKA") services.[2]

---

[2] *See* U.S. Dep't of Labor, *A Look at 401(k) Plan Fees*, (Sept. 2019), at 2, available at https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/publications/a-look-at-401k-plan-fees.pdf; *see also Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1823 (2015) ("*Tibble I*") (reaffirming the ongoing fiduciary duty to monitor a plan's investment options).

2

6.     With regard to plan fees, the DOL states "You should know that your employer also must consider the fees and expenses paid by your plan."[3]

7.     Under 29 U.S.C. § 1104(a)(1), a plan fiduciary must give substantial consideration to the cost of investment options. "Wasting beneficiaries' money is imprudent. In devising and implementing strategies for the investment and management of trust assets, trustees are obligated to minimize costs." Uniform Prudent Investor Act (the "UPIA"), § 7.

8.     "The Restatement … instructs that 'cost-conscious management is fundamental to prudence in the investment function,' and should be applied 'not only in making investments but also in monitoring and reviewing investments.'" *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197-98 (9th Cir. 2016) ("*Tibble II*") (en banc) (quoting Restatement (Third) of Trusts, § 90, cmt. b).

9.     Additional fees of only 0.18% or 0.4% can have a large effect on a participant's investment results over time because "[b]eneficiaries subject to higher fees…lose not only money spent on higher fees, but also lost investment opportunity; that is, the money that the portion of their investment spent on unnecessary fees would have earned over time." *Tibble II*, 843 F.3d at 1198 ("It is beyond dispute that the higher the fees charged to a beneficiary, the more the beneficiary's investment shrinks.").

10.     The Supreme Court reiterated that interpreting "ERISA's duty of prudence in light of the common law of trusts" a fiduciary "has a continuing duty of some kind to monitor investments and remove imprudent ones" and a plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones. *Hughes v. Northwestern Univ.*, 142 S.Ct. 737, 741 (2022).

---

[3] *Id.*

11. At all times during the Class Period, the Plan had significant assets under management. At the Plan's fiscal year end in 2020, the Plan had $972,076,615 in assets under management that were/are entrusted to the care of the Plan's fiduciaries. *See* 2020 Form 5500 for the Plan, Schedule H, at 2.

12. By 2024, the Plan had $1,397,582,709 in assets under management. *See* 2024 Form 5500 for the Plan, Schedule H, at 2.

13. The Plan is also large in terms of the number of its participants. At the Plan's fiscal year end in 2020, the Plan had 6,094 participants with account balances. *See* 2020 Form 5500 for the Plan, at 2. By 2024, the Plan had 8,620 participants with account balances. *See* 2024 Form 5500 for the Plan, at 2.

14. The Plan had substantial bargaining power regarding the fees and expenses that were charged against participants' investments. Plaintiffs allege that during the putative Class Period, Defendant, as a "fiduciary" of the Plan, as that term is defined under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), breached the duties owed to the Plan, to Plaintiffs, and to the other participants of the Plan by, *inter alia*, failing to objectively and adequately review the Plan's investment portfolio with due care to ensure that each investment option was prudent, in terms of cost and performance, and failing to control the Plan's RKA costs.

15. The marketplace for retirement plan services is established and competitive. Accordingly, in addition to the large number of participants, the Plan had substantial bargaining power to obtain high-quality, low-cost RKA services. The Plan's fiduciary, however, did not try to reduce the Plan's expenses to ensure they were prudent. Rather, the Plan's fiduciary allowed unreasonable expenses to be charged to participants for RKA services.

16. During the Class Period, Defendant caused the Plan to enter into an arrangement with Principal Trust Company ("Principal"), who was a party-in-interest[4] engaging in party-in-interest transactions. Specifically, Principal received millions of dollars in exchange for recordkeeping services and trustee services for the Plan. *See* Auditor's Report, attached to 2024 Form 5500 for the Plan, at 8 ("Principal Trust Company (Principal) serves as the Trustee and recordkeeper for the Plan."). Defendant's conduct was especially egregious given that Principal received additional income from certain of the Plan's investment securities. This arrangement, and transactions with Principal, are prohibited transactions because it "amounts to a 'direct or indirect ... furnishing of services ... between the plan and a party in interest,' 29 U.S.C. § 1106(a)(1)(C)." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 601 (8th Cir. 2009).

17. Defendant's mismanagement of the Plan, to the detriment of participants and beneficiaries, constitutes a breach of the fiduciary duties of prudence, in violation of 29 U.S.C. § 1104. Its actions were contrary to actions of a reasonable fiduciary and cost the Plan and its participants millions of dollars.

18. Based on this conduct, Plaintiffs assert claims against Defendant for breach of the fiduciary duty of prudence (Count I), and violations of ERISA's prohibited transactions (Count II).

## II.     JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to 29

---

[4] "Certain Plan investments are shares of short-term fixed income contracts and a pooled separate accounts managed by an affiliate of Principal. Principal is the Trustee as defined by the Plan, and therefore, these transactions qualify as exempt party in interest transactions allowable under ERISA." Auditor's Report, attached to 2024 Form 5500 for the Plan, at 16.

U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001, *et seq*.

20.     This Court has personal jurisdiction over Defendant because it is headquartered and transacts business in this District, resides in this District, and/or has significant contacts with this District, and because ERISA provides for nationwide service of process.

21.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because some or all of the violations of ERISA occurred in this District and Defendant resides and may be found in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does business in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## III.     PARTIES

### Plaintiffs

22.     Plaintiff, Deborah Fritts ("Fritts"), resides in Smyrna, Georgia. During her employment, Plaintiff Fritts participated in the Plan. During the Class Period, Ms. Frits invested in the American Century Retirement Dt 2025 Trust IX fund and the American Century Retirement Dt 2025 Trust XII fund in the Plan. She suffered injury to her Plan account from the underperformance of the funds in the Plan. In addition, Plaintiff Fritts also suffered injury to her Plan account by paying excessive recordkeeping costs.

23.     Plaintiff, Kristina Baker ("Baker"), resides in Krugerville, Texas. During her employment, Plaintiff Baker participated in the Plan. During the Class Period, Ms. Baker invested in the American Century Retirement Dt 2050 Trust XII fund in the Plan. She suffered injury to her Plan account from the underperformance of the funds in the Plan. In addition, Plaintiff Baker also suffered injury to her Plan account by paying excessive recordkeeping costs.

6

24.     Plaintiff, Yvonne Shinn ("Shinn"), resides in Jamaica Plain, Massachusetts. During her employment, Plaintiff Shinn participated in the Plan. During the Class Period, Ms. Shinn invested in the American Century Retirement Dt 2060 Trust XII fund in the Plan. She suffered injury to her Plan account from the underperformance of the funds in the Plan. In addition, Plaintiff Shinn also suffered injury to her Plan account by paying excessive recordkeeping costs.

25.     Plaintiffs have standing to bring this action on behalf of the Plan because they participated in the Plan and were injured by Defendant's unlawful conduct. Plaintiffs are entitled to receive benefits in the amount of the difference between the value of their accounts currently, or as of the time their accounts were distributed, and what their accounts are or would have been worth, but for Defendant's breaches of fiduciary duties as described herein.

26.     Plaintiffs did not have knowledge of all material facts necessary to understand that Defendant breached its fiduciary duties and engaged in other unlawful conduct in violation of ERISA until shortly before this suit was filed.

**<u>Defendant</u>**

27.     Lockton, Inc. is the sponsor of the Plan and a named fiduciary of the Plan with a principal place of business at 444 West 47th Street, Kansas City, Missouri. *See* 2024 Form 5500, at 1. "Lockton is the world's largest independent and privately held insurance brokerage firm" that "serve[s] more than 65,000 clients across six continents." *See* https://global.lockton.com/us/en/private-risk-solutions-about-us, last accessed February 12, 2026.

28.     The Company is a fiduciary of the Plan, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A) for several reasons. First, it is a named fiduciary under the Plan. *See* Lockton, Inc. 401(k) Plan, Restated January 1, 2017 ("Plan Doc."), at 12 ("The Named Fiduciary is the Employer."). Second, the Company was the Plan Administrator for the Plan. *See*

*id.*, at 13 ("The Plan Administrator is the Primary Employer."); *see also* Lockton, Inc. 401(k) Plan Summary Plan Description ("SPD"), at 28 (identifying the Plan Administrator as Lockton, Inc.).

29.     As Plan Administrator, the Company exercised discretionary authority and control over Plan management and/or authority or control over management or disposition of Plan assets. *See* Plan Doc., at 61 ("[T]he Plan Administrator has complete control of the administration of the Plan. The Plan Administrator has all the powers necessary for it to properly carry out its administrative duties."); *see also* SPD, at 10 ("Contributions made to your account are invested to provide benefits under the plan. We decide which investment options are available for your account.").[5]

30.     The Company was a fiduciary of the Plan during the Class Period, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A) because it exercised discretionary authority over management or disposition of Plan assets.

## IV.     CLASS ACTION ALLEGATIONS[6]

31.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following proposed class ("Class"):

---

[5] *See* Plan Doc. at 65 ("All or any part of the administrative duties and responsibilities under this article may be delegated by the Plan Administrator to a retirement committee. The duties and responsibilities of the retirement committee shall be set out in a separate written agreement."). On June 19, 2025, counsel for Plaintiffs requested, among other things, all written agreement under which the Plan was established or operated. This request was made pursuant to pursuant to Section 104(b)(4) of ERISA. No written agreements for any retirement committee were produced by the Plan Administrator. Plaintiffs reserve the right to amend this Complaint if Plaintiffs learn that the Company delegated any fiduciary responsibilities to any retirement committee.

[6] Although this is a proposed class action, the allegations in this complaint are alternatively pled in derivative fashion on behalf of the Plan because class certification is not necessarily required for Plaintiffs to prosecute claims on behalf of the Plan and all participants. *See, e.g.*, *In re: Wilmington Trust Corp.*, 2013 WL 4757843, at *3 (D. Del. Sept. 4, 2013) (granting plaintiffs' motion to proceed derivatively on behalf of all plan participants without class certification, because of the nature of such claims). ERISA Section 502(a), 29 U.S.C. § 1132(a), authorizes pension plan participants to bring suit on behalf of a plan to recover losses to a plan.

All persons, except Defendant, who were participants in or beneficiaries of the Lockton, Inc. 401(k) Plan, at any time between March 6, 2020 through the date of judgment (the "Class Period").[7]

32. The members of the Class are so numerous that joinder of all members is impractical. The 2024 Form 5500 lists 8,620 Plan "participants with account balances as of the end of the plan year." 2024 Form 5500 for the Plan, at 2.

33. Plaintiffs' claims are typical of the claims of the members of the Class. Like other Class members, Plaintiffs participated in the Plan and have suffered injuries as a result of Defendant's mismanagement of the Plan. Defendant treated Plaintiffs consistently with other Class members, and managed the Plan as a single entity. Plaintiffs' claims and the claims of all Class members arise out of the same conduct, policies, and practices of Defendant as alleged herein, and all members of the Class have been similarly affected by Defendant's wrongful conduct.

34. There are questions of law and fact common to the Class, and these questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

A. Whether Defendant is a fiduciary of the Plan;

B. Whether Defendant breached its fiduciary duty of prudence by engaging in the conduct described herein;

C. The proper form of equitable and injunctive relief; and

D. The proper measure of monetary relief.

35. Plaintiffs will fairly and adequately represent the Class, and have retained counsel experienced and competent in the prosecution of ERISA class action litigation. Plaintiffs have no

---

[7] Plaintiffs reserve the right to modify the class definition, propose additional classes or subclasses, in their motion for class certification or subsequent pleadings in this action.

interests antagonistic to those of other members of the Class. Plaintiffs are committed to the vigorous prosecution of this action, and anticipate no difficulty in the management of this litigation as a class action.

36.     This action may be properly certified under Rule 23(b)(1). Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendant. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

37.     In the alternative, certification under Rule 23(b)(2) is warranted because the Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

V.     THE PLAN

38.     The Plan is a defined contribution plan covering substantially all eligible employees of Lockton. *See* Auditor's Report, attached to 2024 Form 5500, at 8 ("The Plan is a defined contribution plan established for the benefit of eligible employees of Lockton, Inc. and other related employers (collectively, the Company), as defined in the Plan Agreement."); *see also* SPD, at 13 ("[T]he Plan is a 'defined contribution' Plan."); *see also* SPD, at 27 ("Because the plan is a defined contribution plan, we keep individual accounts for all participants.").

39. Lockton, originally established the Plan on January 1, 1990, which was restated effective January 1, 2017. *See* Plan Doc., at 1.

*Eligibility*

40. To participate in the Plan, a participant must have worked at the Company for at least thirty days and must be "age 20 or older." Plan Doc., at 19; *see also* Auditor's Report, attached to 2024 Form 5500, at 8 ("Employees become eligible to participate after 30 days of employment and attainment of age twenty.").

*Contributions*

41. Participants may elect to contribute up to 75% of their salary as elective deferral contributions. *See* SPD, at 6 ("You may defer as much as 75% of your pay."); *see also* Auditor's Report, attached to 2024 Form 5500, at 8 ("[P]articipants may contribute an amount equal to or greater than 1%, but not more than 75%, of their compensation for the contribution period.").

42. There is an automatic enrollment feature in the Plan. *See* Plan Doc., at 21 ("The Plan provides for an automatic election to have Elective Deferral Contributions made. The automatic Elective Deferral Contribution shall be Pre-tax Elective Deferral Contributions and shall be 6% of Compensation. The automatic Elective Deferral Contribution shall be automatically increased as soon as administratively feasible on or after each January 1 by 1% up to a maximum automatic Elective Deferral Contribution of 10%.").

43. Lockton makes matching contributions each payroll period equal to 100% of participants first 6% of pre-tax salary deferral contributions. *See* Plan Doc., at 23 ("The Employer shall make Matching Contributions in an amount equal to 100% of Elective Deferral Contributions. Elective Deferral Contributions that are over 6% of Compensation will not be matched."); *see also* SPD, at 7 ("Our matching contributions give you an additional return on the

11

amount you defer. We will make a matching contribution equal to 100% of your 401(k) elective deferral contributions. 401(k) elective deferrals over 6% of your pay are not matched."); Auditor's Report, attached to 2024 Form 5500, at 9 ("The Company contributes a safe harbor matching contribution of 100% of the first 6% of base compensation that a participant contributes to the Plan.").

44. Like other companies that sponsor 401(k) plans for their employees, Lockton enjoys both direct and indirect benefits by providing matching contributions to Plan participants. Employers are generally permitted to take tax deductions for their contributions to 401(k) plans at the time when the contributions are made. *See generally,* https://www.irs.gov/retirement-plans/plan-sponsor/401k-plan-overview.

45. Lockton also benefits in other ways from the Plan's matching program. It is well-known that "[o]ffering retirement plans can help in employers' efforts to attract new employees and reduce turnover." *See* https://www.paychex.com/articles/employee-benefits/employer-matching-401k-benefits.

46. Given the size of the Plan, Lockton likely enjoyed significant tax and cost savings from offering a match.

### *The Plan's Investments*

47. Several funds were available to Plan participants for investment each year during the Class Period, including several American Century One Choice Retirement Trust funds ("AC TDFs").

48. The Plan's assets under management for all funds at the end of 2020 totaled $972,076,615. *See* 2020 Form 5500 for the Plan, Schedule H, at 2.

49. By the end of 2024, the Plan's assets under management totaled $1,397,582,709. *See* 2024 Form 5500 for the Plan, Schedule H, at 2.

**VI.  THE TOTALITY OF THE CIRCUMSTANCES DEMONSTRATES THAT THE PLAN'S FIDUCIARIES FAILED TO ADMINISTER THE PLAN IN A PRUDENT MANNER**

**A.  Overview - ERISA Fiduciaries Are Held to the Highest Standards Regarding Process and Methodology of Evaluating Investments**

50. As described in the "Parties" section above, Defendant was a fiduciary of the Plan.

51. ERISA "imposes a 'prudent person' standard by which to measure fiduciaries' investment decisions and disposition of assets." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2467 (2014) (quotation omitted). In addition to a duty to select prudent investments, under ERISA, a fiduciary "has a continuing duty to monitor [plan] investments and remove imprudent ones" that exist "separate and apart from the [fiduciary's] duty to exercise prudence in selecting investments." *Tibble I*, 135 S. Ct. at 1828; *see also Hughes*, 142 S.Ct. at 741.

52. Plaintiffs did not have and do not have actual knowledge of the specifics of Defendant's decision-making process with respect to the Plan, including Defendant's processes (and execution of such) for selecting, monitoring, and removing the Plan's investments because this information is solely within the possession of Defendant prior to discovery.

53. In fact, and as indicated above, in an attempt to discover the details of the Plan's mismanagement, Plaintiffs wrote to the Plan administrator to request, among other things, "all written instruments" governing or pertaining to the Plan, including "investment policy statements and investment management contracts, or other instruments under which the Plan was established or operated, and all amendments, exhibits, or appendices thereto," as well as any committee's meeting minutes. This request was made pursuant to Section 104(b)(4) of ERISA.

13

54. By letter dated July 18, 2025, Lockton responded to Plaintiffs' request. No investment policy statement, to the extent it exists, or meeting minutes, to the extent they exist, were produced in response to Plaintiffs' request.

55. Reviewing meeting minutes, when they exist, is the bare minimum needed to peek into a fiduciary's monitoring process. But in most cases, even that is not sufficient. For, "[w]hile the absence of a deliberative process may be enough to demonstrate imprudence, the presence of a deliberative process does not … suffice in every case to demonstrate prudence. Deliberative processes can vary in quality or can be followed in bad faith. In assessing whether a fiduciary fulfilled her duty of prudence, we ask 'whether a fiduciary employed the *appropriate* methods to investigate and determine the merits of a particular investment,' not merely whether there were any methods whatsoever." *Sacerdote v. New York Univ.*, 9 F.4th 95, 111 (2d Cir. 2021) (emphasis in original).

56. For purposes of this Complaint, Plaintiffs have drawn reasonable inferences regarding these processes and methods based upon several factors as described below.

57. As stated by the DOL: ERISA "requires plan fiduciaries, when selecting and monitoring service providers and plan investments, to act prudently and solely in the interest of the plan's participants and beneficiaries. Responsible plan fiduciaries also must ensure that arrangements with their service providers are 'reasonable' and that only 'reasonable' compensation is paid for services. …" DOL 408(b)(2) Regulation Fact Sheet.

58. The duty "…to act solely in the best interest of participants has been a key tenet of ERISA since its passage." "Best Practices for Plan Fiduciaries," at 36, published by Vanguard, 2019.[8]

---

[8] Available at https://institutional.vanguard.com/iam/pdf/FBPBK.pdf?cbdForceDomain.

59. Acting in the sole interest of plan participants is all encompassing. A fiduciary must monitor all investment options in a 401(k) plan as a prudent investment professional. *See* the U.S. Department of Labor, Employee Benefits Security Administration (EBSA)'s "Meeting Your Fiduciary Responsibilities," at 2 ("The duty to act prudently is one of a fiduciary's central responsibilities under ERISA. It requires expertise in a variety of areas, such as investments."), available at https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/publications/meeting-your-fiduciary-responsibilities.pdf.

60. A prudent investment professional, and hence a fiduciary, must regularly evaluate a fund's performance history, the portfolio manager's experience and tenure, changes to the fund's investment strategy, changes to the underlying assets in the investment, total assets under management within the fund, fees, and other relevant factors.

61. With respect to investment returns, diligent investment professionals monitor the performance of their selected investments using appropriate industry-recognized "benchmarks" and prudently managed equivalents.

62. The measurement of investments against prudently managed alternatives is critical given that these alternatives represent other investments available to a plan, which may increase the likelihood that participants reach/live their preferred lifestyle in retirement.

63. The specific methodologies used to select prudent investments are primarily data driven. Such data is provided by investment research companies like Morningstar, which is the most accepted source of investment performance information, as it has the most robust information on mutual funds, collective investment trusts, and other types of investments.[9] Indeed, Morningstar

---

[9] *See Mattson et al, v. Milliman, Inc.,* 2024 WL 3024875, n. 13 (W.D. Wa. June 17, 2024) ("Morningstar, Inc. is a widely recognized and respected financial reporting group.")

is used and trusted by virtually all financial professionals and fiduciaries, as explained below, who were required to use Morningstar benchmarks to evaluate the performance of the Plans' funds, including the target date funds.

64. Whether a plan fiduciary enlists the assistance of an investment manager, consultant, or advisor, the plan's fiduciaries are not relieved of fiduciary liability for selecting and monitoring the plan's investment options.

65. It is black letter law that a fiduciary's duty to conduct an "independent investigation into the merits of a particular investment," is the "most basic of ERISA's investment fiduciary duties." *In re Unisys Savings Plan Litigation*, 74 F.3d 420, 435 (3d Circ. 1996). *Hughes*, 142 S.Ct. at 738 (noting ERISA fiduciaries are required to "conduct their own independent evaluation to determine which investments may by prudently included in the plan's menu of options.").

66. Lastly, to the extent plan fiduciaries have adopted an investment policy statement, which does not appear to be the case here, those fiduciaries "must comply with the plan's written statements of investment policy, insofar as those written statements are consistent with the provisions of ERISA." *Lauderdale v. NFP Retirement, Inc.*, 2022 WL 17260510, at * 10 (S.D. Cal. Nov. 17, 2022). That is, the investment policy statement must be written with the sole interest of the plan participant in mind.

67. Defendant's breaches of its fiduciary duties, relating to their overall decision-making, resulted in, *inter alia*, the selection (and maintenance) of the AC TDFs in the Plan throughout the Class Period that wasted the assets of the Plan and the assets of participants because of unnecessary costs and underperformance.

### B.     Evaluating Investments

68.     A prudent investment professional, and hence a fiduciary, must regularly evaluate among other things, a fund's performance history, total assets under management within the fund, fees, and other relevant factors.

69.     Industry experts have concluded that the three- and five-year period is the most appropriate timeframe for evaluating investment performance because it covers a full market cycle. *See* The PNC Financial Services Group, Inc., Assembling a Robust Investment Policy Statement for Endowments and Foundations, June 17, 2021 (a "fund's investment performance should be reviewed regularly, such as on an annual basis; however, the emphasis with regard to performance should be focused on results achieved over a full market cycle (typically a three-to-five year period)"). Available at: https://www.pnc.com/insights/corporate-institutional/manage-assets/assembling-a-robust-investment-policy-statement-for-endowments-foundations.html.[10]

70.     In fact, Morningstar is used by American Century in the American Century Target Date Series' "Statement of Additional Information" supplementing the Prospectuses.[11]

71.     Defendant's breaches of its fiduciary duties, relating to their overall decision-making, resulted in, *inter alia*, the selection (and retention) of the Target Date Fund ("TDF") series identified below, that wasted the assets of the Plan and the assets of participants because of unnecessary costs and predictable underperformance.

### C.     Defendant Breached Its Fiduciary Duties by Selecting and Retaining in the Plan's Lineup the Chronically Underperforming AC TDFs

#### 1.     The Plan's Inclusion of AC TDFs

---

[10] Last accessed February 17, 2026.

[11] *See* https://www.sec.gov/Archives/edgar/data/1293210/000129321020000124/acaapocp2065catchupsai.htm

72. At all relevant times, Defendant selected the materially underperforming American Century One Choice Series of retirement date funds for inclusion in the Plan. The AC TDFs were offered in several different forms including the IX or XII classes.[12] As used herein, the entire series will be referred to as the "American Century Series," when referred to collectively.

73. Target date funds are a staple in almost every defined contribution plan. Although no two target date series are identical, the general strategy, underlying investments, and risk profile is the same across all target date series: "[a] target-date fund is a fund of funds that provides asset-class diversity through a blend of stocks and bonds. Portfolios are adjusted for lower risk as they approach a designated target date" of retirement. https://www.morningstar.com/investing-definitions/target-date-funds-. The subtle differences between series are what makes them more or less prudent than others, especially in terms of performance predictability.

74. Target date funds are designed to provide a single diversified investment vehicle for plan participants. Target date funds are offered as a suite of funds, with each fund based on the participant's anticipated retirement date.

75. The first target date funds in the industry were offered as early as 1994, and since then the market for target date funds has exploded with numerous investment managers offering a variety of different target date fund investments.

76. By the mid-2000s, many target date funds with established performance histories were available to defined contribution plans. By 2009, several target date funds had performance histories of five years or more.

---

[12] In 2020, the Plan offered the IX class of the AC TDFs. Starting in 2021, and continuing throughout the Class Period, the Plan offered the XII class of the AC TDFs to Plan participants.

77.     Multiple types of assets are included in a target date fund portfolio, including equity (stock) and fixed income (bond) securities. Target date funds offer diversity and balanced exposure to a broad array of underlying securities included in the fund.

78.     An investment in a single target date fund can be attractive to plan participants who do not want to actively manage their retirement savings and periodically convert to more conservative holdings as their retirement date draws near. Target date funds automatically rebalance their portfolios to become more conservative as the participant gets closer to retirement.

79.     This rebalancing occurs based on the fund's "glide path." A glide path determines how the fund's target asset allocations across the underlying securities are expected to change over time and how they become more conservative as the target retirement date approaches.

80.     The target date refers to the participant's expected retirement year. For example, "target date 2030" funds are designed for individuals who intend to retire in 2030. As the year 2030 approaches, the fund's investment manager adjusts the underlying asset mix to become more conservative.

81.     Target date funds have been divided into two broad categories by some industry professionals based on the fund's glide path: "To" and "Through" target date funds. A "To" target date fund is designed to allocate its underlying assets to the most conservative investments at the year of the expected retirement. In contrast, a "Through" target date fund continues its glidepath progression to reach its most conservative asset allocation past the expected retirement date. This method focuses on the life expectancy of the participant rather than the retirement date.

82.     The AC TDFs in the Plan were "To" funds.

83.     Another broad classification of target date funds is "actively" or "passively" managed funds. With an actively managed fund, the portfolio manager attempts to select stocks or

bonds to generate investment returns that exceed the relevant benchmark index return. With a passively managed fund, the portfolio manager attempts to mimic the performance of a relevant benchmark index. No discretion or research is needed for passive funds, in contrast to actively managed funds. Because of this, passive or index funds charge a much lower investment management fee and have a lower total "expense ratio" relative to active funds.[13]

84. A fiduciary's duty to ensure that a prudent target date fund is offered to plan participants is heightened when considering the circumstances in which these funds are used by participants. Given the structure of target date funds, participants often invest all their retirement assets in a single target date fund that matches their retirement date.

85. A fiduciary must monitor all investment options in a 401(k) plan as a prudent investment professional.

86. The prevailing standard of care for a fiduciary is to compare investments to several benchmarks. These benchmarks are the relevant market index, peer groups, and individual investible funds that represent alternatives that could replace an investment's position in a plan's investment menu.

87. Here, the performance histories of the American Century One Choice Series were mediocre when compared to their appropriate peer groups.

### 2. Evaluating the American Century Target Date Series

88. The American Century Target Date Series consistently materially underperformed available alternative TDF series as well as the relevant market index and peer groups.

---

[13] The fees of mutual funds and similar investment alternatives are usually expressed as a percentage of assets under management, or "expense ratio." For example, if the fund deducts 1% of fund assets each year in fees, the fund's expense ratio would be 1%, or 100 basis points ("bps"). One basis point is equal to 1/100th of one percent.

89. While ignoring red flags found in a fund's prospectuses is imprudent, it is also imprudent not to investigate objective information that third parties provide regarding an investment.

90. Throughout the Class Period, American Century Investments repeatedly disseminated information that demonstrated poor ratings, performance, strategy, and management of the funds. American Century Investments' reporting of these bad facts outweighed the existence of any seemingly benign facts in the reports. This is especially true because, objective, third-party information also negated any potential redeeming facts American Century stated regarding its own funds.

### 3. Morningstar Benchmarks are Meaningful for Evaluating the Underperformance of the American Century One Choice Series

91. American Century Investments' "Statement of Additional Information"[14] dated September 23, 2020, states that the American Century Target Date Series' "Peer Group" is the "Morningstar Target-Date" peer group (or category).

92. Further, American Century uses data that "is proprietary to Morningstar and/or its content providers" on its webpages for the One Choice portfolios.[15]

93. For another example, American Century publishes Morningstar star ratings on its webpages for the American Century Target Date Series. *See* https://www.americancentury.com/invest/funds/one-choice-2045-portfolio/aroix/.

---

[14] *See* https://www.sec.gov/Archives/edgar/data/1293210/000129321020000124/acaapocp2065catchupsai.htm

[15] *See*, *e.g.*, https://www.americancentury.com/invest/funds/one-choice-2045-portfolio/aroix/

94. Morningstar is an accepted unbiased source of investment fund information, as Morningstar evaluates funds beyond what is stated in their prospectus.

95. Further, because the Morningstar Peer Group is the appropriate peer group (or universe), the Morningstar Lifetime Moderate Index is another appropriate index to benchmark the American Century Target Date Series against.

96. In short, the Morningstar Lifetime Moderate Index category is the appropriate index for understanding what information Defendant likely had at its disposal in the moments when it was supposed to be making decisions regarding the American Century Target Date Series.

97. The "Morningstar Target-Date" peer group, as designated for the American Century Target Date Series by its manager, is the appropriate Morningstar Category.

98. A Morningstar Category is assigned by placing funds into peer groups based on their underlying holdings. The underlying securities in each portfolio are the primary factor in [Morningstar's] analysis . . . . Funds are placed in a category based on their portfolio statistics and compositions over the past three years. Analysis of performance and other indicative facts are also considered." *See* Morningstar's summary of the Northern Trust Focus 2045 Fund, filed in *Allegretti v. Walgreen Co. et al.*, No. 19-cv-05392 at Dkt. 43 ECF pg. 28 (N.D. Ill. Dec. 6, 2019). The analysis in Allegretti similarly deals with the Morningstar Lifetime Moderate Index category. *Id.*

99. Specifically, Morningstar Categories group funds "into categories according to their actual investment style, not merely their stated investment objectives, nor their ability to generate a certain level of income. To ensure homogeneous groupings, Morningstar normally allocates funds to categories on the basis of their portfolio holdings. Several portfolios are taken

into account to ensure that the fund's real investment stance is taken into account." https://lt.morningstar.com/1c6qh1t6k9/glossary/default.aspx?LanguageId=en-GB&group=M.

100. Morningstar categories are more reliable than simply comparing fund prospectuses, because Morningstar is a third-party providing objective, disinterested information. Indeed, "Morningstar categories help investors and investment professionals make meaningful comparisons between funds." https://sg.morningstar.com/sg/news/115635/morningstar-category-definition.aspx

101. The Morningstar Peer Group being the appropriate peer group (or universe), is another reason why the Morningstar Lifetime Moderate Index is an appropriate index to benchmark the American Century Target Date Series against.

### a. The Comparator Funds

102. The established target date investment managers that are worthy of providing alternative TDF investments for the Plan include, but are not limited to, American Funds, Blackrock LifePath Funds, Fidelity Freedom Funds, MoA Clear Passage Funds, Putnam Retirement Funds, and Voya Target Retirement Funds.

103. The American Funds Target Date R6 Series, the BlackRock LifePath Dynamic Retirement Fund K series, the Fidelity Freedom K6 Series, the MoA Clear Passage Target Date Series, the Putnam Retirement Advantage R6 Series, and the Voya Target Date R6 Series will all be referred to as the "Comparator Funds."

104. The Comparator Funds are grouped in the same Morningstar Category as the American Century Target Date Series and are comparable based on several aspects:

### *Underlying Holding and Management*

105.    The American Century Target Date Series and each of the Comparator Funds are large blend style funds, per their Morningstar pages.

106.    "[N]o series is truly passively managed, as every target-date manager makes active decisions in building a glide path and selecting asset classes, sometimes tactically based on market outlooks." *See* https://www.morningstar.com/funds/1-trillion-target-date-fund-landscape.

107.    The Comparator Funds also all have a significant degree of active management, or are purely actively managed.

108.    The 2040 vintage is a good demonstration of the asset allocations for the American Century Target Date Series, the Comparator Funds, the Morningstar Category, and the Morningstar Index, because the target date is neither too close nor too distant. The asset allocation is sufficiently similar across all funds, where U.S. Equities are the largest percentage of holdings, and the remaining holding are Fixed Income (or bonds), Cash investments, and "other" or "not classified" investments:

| | U.S. Equity | Bond | Cash | Other |
|---|---|---|---|---|
| **American Century One Choice 2045 XI** | 59.48% | 38.00% | 1.64% | 0.89% |
| **BlackRock LifePath® Dyn 2040 K** | 75.38% | 21.75% | 3.32% | -0.46% |
| **Fidelity Freedom 2040 K6** | 80.21% | 16.84% | 2.09% | 0.86% |
| **MoA Clear Passage 2040 Fund** | 78.85% | 17.53% | 3.46% | 0.15% |
| **Putnam Retirement Advantage 2040 R6** | 77.91% | 31.66% | -13.44% | 3.87% |
| **Voya Target Retirement 2040 R6** | 82.07% | 17.83% | 0.06% | 0.05% |
| **Morningstar Lifetime Mod 2040 TR USD** | 75.09% | 24.20% | 0.00% | 0.71% |

109. Relevant for comparison purposes is that the Comparator Funds represented similar priorities of asset allocation at the same time, yet to a lesser extreme, which resulted in the Comparator Funds achieving better returns without using a pointlessly unorthodox glidepath strategy.

***Glide Paths and Strategy***

110. The strategy of a target date series is to "gradually shift[] a retirement fund's investments from riskier to safer options as you get closer to retirement age. This reallocation is based on the Fund's 'glide path.'" *Johnson v. Parker-Hannifin Corp.*, 122 F.4th 205, 210 (6th Cir. Nov. 20, 2024) (internal citations omitted).

111. "Glide paths in retirement funds come in two main types: 'to' and 'through.' 'To' glide paths reach their most conservative allocation at the target retirement date and stay there, while 'through' glide paths continue to adjust and become more conservative for several years after the retirement date." *Id*.

112. Also, a "'to' objective is focused on limiting the volatility or the variability of outcomes for the investor up to retirement, while a 'through' objective drives growth for participant balances for several years and then allows them to be converted into income through retirement." https://www.plansponsor.com/in-depth/evaluating-vs-glide-paths/, dated February 17, 2021.

113. "The retirement industry previously perceived "to" glide paths as more conservative than "'through' ones[,]" but the market volatility of the 2020 Covid-19 Pandemic dispelled the widely held beliefs that there is a material difference in outcomes based on a fund's glidepath, as opposed to other factors. https://www.plansponsor.com/in-depth/evaluating-vs-glide-paths/, dated February 17, 2021.

114. Critically, as target-date portfolio specialist Joe Martel explained, "volatility risk" is "rarely catastrophic due to its short-term nature." "However, longevity risk is a lasting problem—a participant who runs out of retirement income at age 80 or 85 will experience devastating consequences." https://www.plansponsor.com/in-depth/evaluating-vs-glide-paths/

115. For this reason, by the year 2024, 73% of TDFs were "through" funds "that continue to change their allocations for up to 30 years after the target date, while the remainder are "to" funds with allocations that no longer change after the target date." *See* https://www.ici.org/system/files/2025-12/25-ici-quick-facts-target-date-funds.pdf.

116. In short, even if the type of glidepath were a prominent consideration for fiduciaries (it is not), "to" glidepaths are unfavored because, the "through" glidepath TDF's provide more secure long-term income which is the essential purpose of a TDF, while the relatively brief market volatility for which "to" glidepaths purport to protect against have proven to be inconsequential in the long term.

117. Hence, a prudent fiduciary investigating the marketplace's trends and alternative funds will compare funds with to and through glide paths.

118. Indeed, even American Century deems it acceptable to compare the American Century Target Date Series to both "to" and "through" glidepath TDFs, because American Century states that Morningstar's TDF peer group is appropriate, despite the fact that it includes TDFs with both types of glidepath.

119. American Century Investments states that the American Century Target Date Series have "a more moderate, flatter glide path, which aims to keep more participants on course throughout the journey to and through retirement." *See* https://res.americancentury.com/docs/a-auth/one-choice-target-date-portfolios-plan-sponsor-brochure?cpg=true.

26

120. The Summary Prospectus, dated December 1, 2025 for the American Century Investments One Choice Blend+ 2030 Portfolio explains how the glidepath operates: "approximately five years after the target date, at which point its neutral mix is expected to become fixed at 40% stock funds, 51% bond funds and 9% short-term funds." *See* https://www.sec.gov/Archives/edgar/data/1293210/000129321025000228/acaapocpblend2030portfolio.htm.

121. Morningstar reports that the "American Century One Choice target-date series offers a contrarian approach to retirement investing. A distinctly flat glide path aims to mitigate sharp drawdowns for most of the investment journey but courts above-average risk for retirees." https://www.morningstar.com/funds/xnas/arfsx/quote.

122. Because of the unconventional, unproven glidepath strategy, the American Century Funds necessitate a heightened level of scrutiny by fiduciaries to determine whether the strategy was working as hoped.

123. As discussed herein, American Century's speculation that the atypically "flatter" glidepath strategy would lead to better results than the results achieved by other TDFs using conventional wisdom achieved never materialized. In fact, it repeatedly proved to be a losing strategy.

124. Indeed, the strategy did not materially "mitigate sharp drawdowns", particularly when properly viewing the American Century Target Date Series' returns for a whole market cycle.

125. Instead, the American Century Target Date Series underperformed for years before and after market draw downs, performed unremarkably during market draw downs, and repeatedly

proved to have a defective strategy that did not achieve the fund's aims- thus guaranteeing that retirees were not receiving safe and/or optimal funds for and throughout retirement.

126. The American Century Target Date Series offered no meaningful market volatility security nor greater income in the longevity sense, particularly compared to the dozens of other TDF series the Plan could have invested in that employed conventional wisdom for their glidepaths, allocations, and strategies.

127. Had Defendant investigated the marketplace it would have discovered that other TDFs with "moderate" glidepaths seeking stability in market downturns existed, without going to the extreme flat glidepath that the American Century Target Date Series employed.

128. These moderate glidepath TDFs, including some of the Comparator Funds, ensured that the more important, higher possible returns in good markets were not sacrificed for the short-term safer returns in market downturns.

129. The Voya Target Retirement Funds are "to" glidepath TDFs like the American Century Target Date Series, but with a more conventional approach, which resulted in greater returns overall.[16]

130. The BlackRock LifePath Dynamic Target Date Funds' glidepath is also comparable because it is a "to" glidepath, like the American Century Target Date Series, and the fund's "asset mix between equity and fixed income assets becomes more conservative — prior to retirement — as time elapses."[17]

---

[16] *See* https://presents.voya.com/Content/Delivers/adp/presentationresources/Voya_TARGET_SOLUTION_TRUST_SERIES_Q4_2024.pdf

[17] *See* https://www.troweprice.com/personal-investing/tools/fund-research/target-date-funds#TargetFunds.

131. The Putnam Retirement Advantage target date funds' glidepath is also comparable because it is a "to" glidepath, like the American Century Target Date Series.[18]

132. The below table compares the American Target Date Series to the aforementioned funds, demonstrating the American Target Date Series' dismal performance:

| Group/Investment | 1/1/2020 12/31/2020 Return (Cumulative) | 1/1/2021 12/31/2021 Return (Cumulative) | 1/1/2022 12/31/2022 Return (Cumulative) | 1/1/2023 12/31/2023 Return (Cumulative) | 1/1/2024 12/31/2024 Return (Cumulative) | 1/1/2025 12/31/2025 Return (Cumulative) |
|---|---|---|---|---|---|---|
| **US CIT Target-Date 2025** | | | | | | |
| American Century One Choice 2025 XII | | | -13.26 | 11.88 | 8.28 | |
| BlackRock LifePath® Dyn 2025 K | 13.17 | 9.05 | -15.06 | 13.33 | | |
| Putnam Retirement Advantage 2025 R6 | 9.71 | 6.98 | -13.18 | 11.76 | 9.65 | |
| Voya Target Retirement 2025 R6 | 13.10 | 11.43 | -16.88 | 14.13 | 9.29 | |
| *Morningstar Lifetime Mod 2025 TR USD* | 13.67 | 10.10 | -17.58 | 12.15 | 7.97 | 13.72 |
| | | | | | | |
| **US CIT Target-Date 2030** | | | | | | |
| American Century One Choice 2030 XII | 13.21 | 10.73 | -14.21 | 12.65 | 8.76 | 12.26 |
| BlackRock LifePath® Dyn 2030 K | 13.36 | 11.70 | -15.63 | 15.61 | 10.58 | 13.92 |
| Putnam Retirement Advantage 2030 R6 | 11.91 | 12.07 | -14.26 | 14.82 | 12.34 | 11.94 |
| Voya Target Retirement 2030 R6 | 14.60 | 13.42 | -17.39 | 15.73 | 10.85 | 15.36 |
| *Morningstar Lifetime Mod 2030 TR USD* | 13.69 | 11.69 | -17.94 | 13.33 | 8.83 | 14.79 |
| | | | | | | |
| **US CIT Target-Date 2035** | | | | | | |
| American Century One Choice 2035 XII | 14.39 | 11.51 | -14.98 | 13.54 | 9.36 | 13.10 |
| BlackRock LifePath® Dyn 2035 K | 14.14 | 13.97 | -16.32 | 17.53 | 12.06 | 15.57 |
| Putnam Retirement Advantage 2035 R6 | 13.43 | 14.72 | -15.16 | 18.20 | 16.24 | 14.58 |
| Voya Target Retirement 2035 R6 | 15.78 | 15.52 | -17.98 | 17.64 | 12.35 | 17.16 |
| *Morningstar Lifetime Mod 2035 TR USD* | 13.38 | 13.63 | -17.75 | 14.84 | 10.18 | 16.27 |
| | | | | | | |
| **US CIT Target-Date 2040** | | | | | | |
| American Century One Choice 2040 XII | 15.72 | 12.21 | -15.81 | 14.40 | 10.20 | 14.06 |
| BlackRock LifePath® Dyn 2040 K | 14.23 | 16.38 | -16.90 | 19.55 | 14.20 | 17.23 |

---

[18] *See* https://www.putnam.com/target-date-funds-tool/the-glide-path.

| | | | | | | |
|---|---|---|---|---|---|---|
| Putnam Retirement Advantage 2040 R6 | 14.46 | 16.48 | -15.90 | 20.00 | 18.13 | 16.70 |
| Voya Target Retirement 2040 R6 | 17.15 | 17.70 | -18.37 | 19.29 | 13.72 | 19.16 |
| *Morningstar Lifetime Mod 2040 TR USD* | 13.09 | 15.35 | -17.37 | 16.34 | 11.70 | 18.00 |
| | | | | | | |
| **US CIT Target-Date 2045** | | | | | | |
| American Century One Choice 2045 XII | 17.02 | 13.10 | -16.35 | 15.14 | 11.08 | 14.86 |
| BlackRock LifePath® Dyn 2045 K | 14.54 | 17.93 | -17.44 | 21.22 | 15.85 | 18.70 |
| Putnam Retirement Advantage 2045 R6 | 14.99 | 17.62 | -16.50 | 21.33 | 19.31 | 18.28 |
| Voya Target Retirement 2045 R6 | 17.60 | 19.02 | -18.53 | 20.16 | 14.91 | 20.19 |
| *Morningstar Lifetime Mod 2045 TR USD* | 12.95 | 16.36 | -17.06 | 17.39 | 12.86 | 19.54 |
| | | | | | | |
| **US CIT Target-Date 2050** | | | | | | |
| American Century One Choice 2050 XII | 18.20 | 14.17 | -16.79 | 15.96 | 12.01 | 15.59 |
| BlackRock LifePath® Dyn 2050 K | 15.07 | 18.45 | -18.47 | 22.28 | 16.74 | 20.37 |
| Putnam Retirement Advantage 2050 R6 | 15.96 | 18.59 | -17.04 | 22.78 | 20.24 | 19.01 |
| Voya Target Retirement 2050 R6 | 17.38 | 18.90 | -18.70 | 20.51 | 15.38 | 20.78 |
| *Morningstar Lifetime Mod 2050 TR USD* | 12.91 | 16.60 | -16.91 | 17.85 | 13.36 | 20.52 |
| | | | | | | |
| **US CIT Target-Date 2055** | | | | | | |
| American Century One Choice 2055 XII | 18.56 | 14.74 | -16.99 | 16.60 | 12.83 | 16.27 |
| BlackRock LifePath® Dyn 2055 K | 15.69 | 18.72 | -18.49 | 22.38 | 17.36 | 21.21 |
| Putnam Retirement Advantage 2055 R6 | 16.62 | 19.59 | -17.55 | 24.29 | 21.30 | 19.53 |
| Voya Target Retirement 2055 R6 | 17.53 | 19.08 | -18.81 | 20.71 | 15.55 | 20.83 |
| *Morningstar Lifetime Mod 2055 TR USD* | 12.91 | 16.50 | -16.93 | 17.90 | 13.33 | 20.96 |
| | | | | | | |
| **US CIT Target-Date 2060** | | | | | | |
| American Century One Choice 2060 XII | 18.95 | 15.15 | -17.10 | 16.85 | 13.20 | 16.61 |
| BlackRock LifePath® Dyn 2060 K | 14.62 | 18.43 | -18.51 | 22.62 | 17.36 | 21.41 |
| Putnam Retirement Advantage 2060 R6 | 17.09 | 20.32 | -17.91 | 25.56 | 22.27 | 19.95 |
| Voya Target Retirement 2060 R6 | 17.82 | 19.33 | -18.83 | 20.77 | 15.54 | 20.91 |
| *Morningstar Lifetime Mod 2060 TR USD* | 12.89 | 16.33 | -16.98 | 17.86 | 13.15 | 21.15 |
| | | | | | | |
| **US CIT Target-Date 2065+** | | | | | | |
| American Century One Choice 2065 XII | | 15.46 | -17.10 | 17.09 | 13.52 | 16.83 |
| BlackRock LifePath® Dyn 2065 K | 14.15 | 18.72 | -18.37 | 22.75 | 16.73 | 21.39 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Putnam Retirement Advantage 2065 R6 | | 20.41 | -18.06 | 26.06 | 22.70 | 20.38 |
| Voya Target Retirement 2065 R6 | | 19.31 | -18.86 | 20.92 | 15.69 | 20.96 |
| *Morningstar Lifetime Mod 2065 TR USD* | 12.88 | 16.10 | -17.00 | 17.78 | 12.92 | 21.29 |

133.     The above data also demonstrates why it is appropriate to evaluate TDFs through full market cycles rather than myopically focusing on a TDF's behavior during a market downturn. The volatility risks faced by these funds were predictably short-term while the surrounding years offered outweighing potential returns that the BlackRock Putnam and Voya funds achieved and the American Century Target Date Series did not.

134.     The MoA Clear Passage funds are "through" glidepaths, but in a more conservative sense because the glidepath becomes fixed within 10 years of the retirement date.[19]

135.     The Fidelity Freedom Funds are also "through" glidepaths, and "are generally expected to reach their most conservative allocation 10–19 years after the target date."[20]

136.     Below is a comparison of the American Century Target Date Series to the MoA Clear Passage funds and Fidelity Freedom Funds:

| | 1/1/2020 12/31/2020 | 1/1/2021 12/31/2021 | 1/1/2022 12/31/2022 | 1/1/2023 12/31/2023 | 1/1/2024 12/31/2024 | 1/1/2025 12/31/2025 |
|---|---|---|---|---|---|---|
| Group/Investment | Return (Cumulative) | Return (Cumulative) | Return (Cumulative) | Return (Cumulative) | Return (Cumulative) | Return (Cumulative) |
| | | | | | | |
| **US CIT Target-Date 2025** | | | | | | |
| American Century One Choice 2025 XII | | | -13.26 | 11.88 | 8.28 | |
| Fidelity Freedom 2025 K6 | 14.87 | 10.29 | -16.54 | 14.44 | 8.48 | 16.75 |
| MoA Clear Passage 2025 Fund | 10.26 | 11.96 | -13.56 | 13.59 | 9.70 | 12.81 |
| | | | | | | |
| **US CIT Target-Date 2030** | | | | | | |
| American Century One Choice 2030 XII | 13.21 | 10.73 | -14.21 | 12.65 | 8.76 | 12.26 |
| Fidelity Freedom 2030 K6 | 15.84 | 11.69 | -16.77 | 15.72 | 9.51 | 17.95 |
| MoA Clear Passage 2030 Fund | 11.67 | 15.29 | -14.14 | 15.25 | 11.16 | 13.85 |

---

[19] *See* https://moafunds.com/funds/target-date

[20] *See* https://www.fidelity.com/mutual-funds/fidelity-fund-.

| | | | | | |
|---|---|---|---|---|---|
| **US CIT Target-Date 2035** | | | | | |
| American Century One Choice 2035 XII | 14.39 | 11.51 | -14.98 | 13.54 | 9.36 | 13.10 |
| Fidelity Freedom 2035 K6 | 17.41 | 14.56 | -17.51 | 18.06 | 11.33 | 19.56 |
| MoA Clear Passage 2035 Fund | 12.61 | 17.84 | -15.20 | 17.26 | 13.05 | 15.32 |
| | | | | | |
| **US CIT Target-Date 2040** | | | | | |
| American Century One Choice 2040 XII | 15.72 | 12.21 | -15.81 | 14.40 | 10.20 | 14.06 |
| Fidelity Freedom 2040 K6 | 18.53 | 16.70 | -18.06 | 20.26 | 13.61 | 22.34 |
| MoA Clear Passage 2040 Fund | 13.43 | 19.89 | -15.37 | 18.87 | 14.35 | 16.95 |
| | | | | | |
| **US CIT Target-Date 2045** | | | | | |
| American Century One Choice 2045 XII | 17.02 | 13.10 | -16.35 | 15.14 | 11.08 | 14.86 |
| Fidelity Freedom 2045 K6 | 18.46 | 16.78 | -18.12 | 20.91 | 14.40 | 24.07 |
| MoA Clear Passage 2045 Fund | 13.31 | 20.57 | -15.59 | 19.64 | 14.90 | 17.70 |
| | | | | | |
| **US CIT Target-Date 2050** | | | | | |
| American Century One Choice 2050 XII | 18.20 | 14.17 | -16.79 | 15.96 | 12.01 | 15.59 |
| Fidelity Freedom 2050 K6 | 18.48 | 16.79 | -18.10 | 20.87 | 14.44 | 24.05 |
| MoA Clear Passage 2050 Fund | 13.39 | 20.82 | -15.66 | 19.94 | 15.39 | 17.82 |
| | | | | | |
| **US CIT Target-Date 2055** | | | | | |
| American Century One Choice 2055 XII | 18.56 | 14.74 | -16.99 | 16.60 | 12.83 | 16.27 |
| Fidelity Freedom 2055 K6 | 18.46 | 16.77 | -18.07 | 20.85 | 14.43 | 24.06 |
| MoA Clear Passage 2055 Fund | 13.93 | 21.11 | -15.77 | 19.98 | 15.66 | 18.27 |
| | | | | | |
| **US CIT Target-Date 2060** | | | | | |
| American Century One Choice 2060 XII | 18.95 | 15.15 | -17.10 | 16.85 | 13.20 | 16.61 |
| Fidelity Freedom 2060 K6 | 18.53 | 16.71 | -18.09 | 20.87 | 14.39 | 24.13 |
| MoA Clear Passage 2060 Fund | 14.08 | 21.60 | -15.72 | 20.19 | 15.73 | 18.45 |
| | | | | | |
| **US CIT Target-Date 2065+** | | | | | |
| American Century One Choice 2065 XII | | 15.46 | -17.10 | 17.09 | 13.52 | 16.83 |
| Fidelity Freedom 2065 K6 | 18.33 | 16.75 | -18.04 | 20.78 | 14.43 | 24.08 |
| MoA Clear Passage 2065 Fund | | 21.73 | -15.54 | 20.50 | 16.01 | 18.17 |

**D.** **The American Century Series of Target Date Funds Chronically Underperformed**

137. In 2020, the Plan held over $429 million dollars in the American Century Target Date Series. *See* Schedule of Assets Held at End of Year, attached to 2020 Form 5500, at 14. With such a large amount invested in the target date series, the Plan would have been able to choose virtually any available target date series for the Plan.

138. The American Century Target Date Series are the only target date investing options in the Plan. In other words, participants in the Plan who want to invest in a target date strategy have no choice other than the American Century Target Date Series.

139. Defendant was under an obligation under ERISA to carefully vet the American Century Target Date Series before selecting them for inclusion in the Plan. Defendant was also under a continuing obligation under ERISA to carefully monitor and scrutinize the performance of the American Century Target Date Series on an ongoing basis thereafter.

**1.** **The American Century Target Date Series Materially Underperformed Relative to Comparator Target Date Funds and Indexes**

140. A prudent fiduciary should have used some or all of the aforementioned benchmarks, or substantially similar benchmarks, to evaluate the performance of the American Century Target Date Series at least as early as the inception of the Class Period.

141. The performance of the American Century Target Date Series lagged behind the performance of the applicable Comparator Funds for many years before the inception of the Class Period clearly showing that it was an imprudent choice for the Plan.

142. As seen in the table below, the Challenged Funds (in yellow) underperformed compared to the peers in their Morningstar Categories and their Morningstar benchmarks on a 3-year average basis since the start of the Class Period and continued to underperform throughout

the Class Period. Specifically, the chart below demonstrates that, from 2020 through 2025, the 2025-2065 vintages of the American Century Target Date Series underperformed against the Comparator Funds' corresponding vintages 183 out of 208 instances (87.98%).

| Group/Investment | 1/1/2018 12/31/2020 Return (Annualized) | 1/1/2019 12/31/2021 Return (Annualized) | 1/1/2020 12/31/2022 Return (Annualized) | 1/1/2021 12/31/2023 Return (Annualized) | 1/1/2022 12/31/2024 Return (Annualized) | 1/1/2023 12/31/2025 Return (Annualized) |
|---|---|---|---|---|---|---|
| **US CIT Target-Date 2025** | | | | | | |
| American Century One Choice 2025 XII | | | | | 1.67 | |
| BlackRock LifePath® Dyn 2025 K | 8.99 | 13.90 | 1.58 | 1.63 | | |
| Fidelity Freedom 2025 K6 | 9.02 | 14.90 | 1.88 | 1.75 | 1.19 | 13.17 |
| MoA Clear Passage 2025 Fund | 7.78 | 13.93 | 2.19 | 3.21 | 2.51 | 12.02 |
| Putnam Retirement Advantage 2025 R6 | | | | 0.63 | 1.25 | 2.09 |
| Voya Target Retirement 2025 R6 | 8.19 | 14.25 | 1.56 | 1.87 | 1.21 | |
| *Morningstar Lifetime Mod 2025 TR USD* | 8.87 | 14.31 | 1.04 | 0.59 | -0.07 | 11.26 |
| | | | | | | |
| **US CIT Target-Date 2030** | | | | | | |
| American Century One Choice 2030 XII | 8.45 | 14.21 | 2.45 | 2.29 | 1.67 | 11.21 |
| BlackRock LifePath® Dyn 2030 K | 9.50 | 15.69 | 2.23 | 2.90 | 2.56 | 13.35 |
| Fidelity Freedom 2030 K6 | 9.63 | 16.45 | 2.50 | 2.46 | 1.79 | 14.34 |
| MoA Clear Passage 2030 Fund | 8.39 | 16.22 | 3.40 | 4.49 | 3.23 | 13.41 |
| Putnam Retirement Advantage 2030 R6 | | | 2.45 | 3.33 | 3.41 | 13.02 |
| Voya Target Retirement 2030 R6 | 8.85 | 16.18 | 2.40 | 2.74 | 1.96 | 13.96 |
| *Morningstar Lifetime Mod 2030 TR USD* | 9.09 | 15.47 | 1.38 | 1.27 | 0.40 | 12.29 |
| | | | | | | |
| **US CIT Target-Date 2035** | | | | | | |
| American Century One Choice 2035 XII | 9.06 | 15.32 | 2.74 | 2.48 | 1.82 | 11.98 |
| BlackRock LifePath® Dyn 2035 K | 9.87 | 17.25 | 2.87 | 3.88 | 3.30 | 15.03 |
| Fidelity Freedom 2035 K6 | 10.39 | 18.83 | 3.53 | 3.72 | 2.73 | 16.26 |
| MoA Clear Passage 2035 Fund | 8.85 | 17.94 | 4.01 | 5.42 | 3.98 | 15.20 |
| Putnam Retirement Advantage 2035 R6 | | | 3.35 | 4.78 | 5.24 | 16.33 |
| Voya Target Retirement 2035 R6 | 9.46 | 17.85 | 3.14 | 3.69 | 2.73 | 15.70 |
| *Morningstar Lifetime Mod 2035 TR USD* | 9.14 | 16.60 | 1.95 | 2.38 | 1.34 | 13.73 |
| | | | | | | |
| **US CIT Target-Date 2040** | | | | | | |
| American Century One Choice 2040 XII | 9.72 | 16.44 | 3.01 | 2.62 | 2.01 | 12.87 |
| BlackRock LifePath® Dyn 2040 K | 10.07 | 18.75 | 3.38 | 4.96 | 4.30 | 16.97 |
| Fidelity Freedom 2040 K6 | 10.78 | 20.25 | 4.26 | 4.77 | 3.84 | 18.68 |
| MoA Clear Passage 2040 Fund | 9.07 | 19.10 | 4.80 | 6.45 | 4.78 | 16.71 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Putnam Retirement Advantage 2040 R6 | | | 3.89 | 5.54 | 6.03 | 18.27 |
| Voya Target Retirement 2040 R6 | 9.95 | 19.46 | 4.02 | 4.65 | 3.46 | 17.36 |
| *Morningstar Lifetime Mod 2040 TR USD* | 9.10 | 17.50 | 2.54 | 3.51 | 2.40 | 15.32 |
| | | | | | | |
| **US CIT Target-Date 2045** | | | | | | |
| American Century One Choice 2045 XII | 10.34 | 17.65 | 3.45 | 2.90 | 2.28 | 13.68 |
| BlackRock LifePath® Dyn 2045 K | 10.11 | 19.60 | 3.70 | 5.68 | 5.06 | 18.57 |
| Fidelity Freedom 2045 K6 | 10.78 | 20.27 | 4.24 | 4.95 | 4.24 | 19.72 |
| MoA Clear Passage 2045 Fund | 8.97 | 19.38 | 4.87 | 6.78 | 5.08 | 17.39 |
| Putnam Retirement Advantage 2045 R6 | | | 4.14 | 6.02 | 6.52 | 19.63 |
| Voya Target Retirement 2045 R6 | 10.09 | 20.43 | 4.47 | 5.23 | 4.00 | 18.40 |
| *Morningstar Lifetime Mod 2045 TR USD* | 9.03 | 17.99 | 2.92 | 4.25 | 3.19 | 16.56 |
| | | | | | | |
| **US CIT Target-Date 2050** | | | | | | |
| American Century One Choice 2050 XII | 10.91 | 18.85 | 3.94 | 3.28 | 2.62 | 14.50 |
| BlackRock LifePath® Dyn 2050 K | 10.23 | 19.96 | 3.58 | 5.70 | 5.19 | 19.77 |
| Fidelity Freedom 2050 K6 | 10.76 | 20.25 | 4.26 | 4.95 | 4.24 | 19.72 |
| MoA Clear Passage 2050 Fund | 8.86 | 19.53 | 4.94 | 6.92 | 5.29 | 17.70 |
| Putnam Retirement Advantage 2050 R6 | | | 4.49 | 6.50 | 6.99 | 20.67 |
| Voya Target Retirement 2050 R6 | 10.02 | 20.44 | 4.30 | 5.22 | 4.17 | 18.86 |
| *Morningstar Lifetime Mod 2050 TR USD* | 8.96 | 18.09 | 3.04 | 4.52 | 3.54 | 17.20 |
| | | | | | | |
| **US CIT Target-Date 2055** | | | | | | |
| American Century One Choice 2055 XII | 11.03 | 19.33 | 4.14 | 3.56 | 2.98 | 15.22 |
| BlackRock LifePath® Dyn 2055 K | 10.41 | 20.30 | 3.83 | 5.80 | 5.39 | 20.30 |
| Fidelity Freedom 2055 K6 | 10.78 | 20.24 | 4.26 | 4.95 | 4.25 | 19.71 |
| MoA Clear Passage 2055 Fund | 8.90 | 19.73 | 5.14 | 6.97 | 5.34 | 17.96 |
| Putnam Retirement Advantage 2055 R6 | | | 4.76 | 7.01 | 7.52 | 21.69 |
| Voya Target Retirement 2055 R6 | 10.09 | 20.59 | 4.35 | 5.28 | 4.23 | 19.00 |
| *Morningstar Lifetime Mod 2055 TR USD* | 8.88 | 18.05 | 3.00 | 4.50 | 3.54 | 17.36 |
| | | | | | | |
| **US CIT Target-Date 2060** | | | | | | |
| American Century One Choice 2060 XII | 11.24 | 19.76 | 4.33 | 3.71 | 3.12 | 15.54 |
| BlackRock LifePath® Dyn 2060 K | 9.97 | 19.83 | 3.42 | 5.77 | 5.45 | 20.44 |
| Fidelity Freedom 2060 K6 | 10.78 | 20.22 | 4.25 | 4.93 | 4.23 | 19.73 |
| MoA Clear Passage 2060 Fund | | 19.99 | 5.35 | 7.19 | 5.44 | 18.11 |
| Putnam Retirement Advantage 2060 R6 | | | 4.97 | 7.44 | 8.02 | 22.57 |
| Voya Target Retirement 2060 R6 | 10.15 | 20.77 | 4.50 | 5.37 | 4.24 | 19.05 |
| *Morningstar Lifetime Mod 2060 TR USD* | 8.81 | 17.95 | 2.92 | 4.41 | 3.45 | 17.34 |
| | | | | | | |
| **US CIT Target-Date 2065+** | | | | | | |

35

| | | | | | 3.88 | 3.29 | 15.80 |
|---|---|---|---|---|---|---|---|
| American Century One Choice 2065 XII | | | | | 3.88 | 3.29 | 15.80 |
| BlackRock LifePath® Dyn 2065 K | | | | 3.42 | 5.96 | 5.36 | 20.26 |
| Fidelity Freedom 2065 K6 | | | | 4.23 | 4.94 | 4.24 | 19.70 |
| MoA Clear Passage 2065 Fund | | | | | 7.40 | 5.70 | 18.21 |
| Putnam Retirement Advantage 2065 R6 | | | | | 7.54 | 8.22 | 23.03 |
| Voya Target Retirement 2065 R6 | | | | | 5.39 | 4.31 | 19.16 |
| *Morningstar Lifetime Mod 2065 TR USD* | 8.52 | 17.80 | 2.84 | 4.31 | 3.35 | 17.28 |

143. As seen in the table below, the Challenged Funds (in yellow) underperformed compared to the peers in their Morningstar Categories and their Morningstar benchmarks on a 5-year average basis since the start of the Class Period and continued to underperform throughout the Class Period. Specifically, the chart below demonstrates that, from 2020 through 2025, the 2025-2065 vintages of the American Century Target Date Series underperformed against the Comparator Funds' corresponding vintages 165 out of 181 instances (91.16%).

| | 1/1/2016 12/31/2020 | 1/1/2017 12/31/2021 | 1/1/2018 12/31/2022 | 1/1/2019 12/31/2023 | 1/1/2020 12/31/2024 | 1/1/2021 12/31/2025 |
|---|---|---|---|---|---|---|
| Group/Investment | Return (Annualized) | Return (Annualized) | Return (Annualized) | Return (Annualized) | Return (Annualized) | Return (Annualized) |
| | | | | | | |
| **US CIT Target-Date 2025** | | | | | | |
| American Century One Choice 2025 XII | | | | | | |
| BlackRock LifePath® Dyn 2025 K | 9.91 | 10.32 | 3.70 | 7.30 | | |
| Fidelity Freedom 2025 K6 | 10.25 | 10.82 | 3.59 | 7.70 | 5.59 | 5.94 |
| MoA Clear Passage 2025 Fund | 9.49 | 9.91 | 3.91 | 7.75 | 5.87 | 6.35 |
| Putnam Retirement Advantage 2025 R6 | | | | | 4.54 | |
| Voya Target Retirement 2025 R6 | 9.20 | 10.23 | 3.24 | 7.19 | 5.49 | |
| *Morningstar Lifetime Mod 2025 TR USD* | 9.88 | 10.22 | 3.20 | 6.67 | 4.55 | 4.56 |
| | | | | | | |
| **US CIT Target-Date 2030** | | | | | | |
| American Century One Choice 2030 XII | 9.15 | 9.95 | 3.92 | 7.56 | 5.67 | 5.49 |
| BlackRock LifePath® Dyn 2030 K | 10.72 | 11.58 | 4.35 | 8.59 | 6.43 | 6.54 |
| Fidelity Freedom 2030 K6 | 11.32 | 12.04 | 4.14 | 8.75 | 6.42 | 6.80 |
| MoA Clear Passage 2030 Fund | 10.33 | 11.23 | 4.74 | 9.21 | 7.21 | 7.62 |
| Putnam Retirement Advantage 2030 R6 | | | | | 6.76 | 6.77 |
| Voya Target Retirement 2030 R6 | 10.07 | 11.41 | 3.86 | 8.44 | 6.62 | 6.76 |
| *Morningstar Lifetime Mod 2030 TR USD* | 10.58 | 11.07 | 3.54 | 7.44 | 5.15 | 5.35 |

| | | | | | |
|---|---|---|---|---|---|
| **US CIT Target-Date 2035** | | | | | |
| American Century One Choice 2035 XII | 9.80 | 10.70 | 4.22 | 8.16 | 6.13 | 5.89 |
| BlackRock LifePath® Dyn 2035 K | 11.36 | 12.60 | 4.81 | 9.66 | 7.47 | 7.74 |
| Fidelity Freedom 2035 K6 | 12.30 | 13.50 | 4.92 | 10.32 | 7.84 | 8.23 |
| MoA Clear Passage 2035 Fund | 10.97 | 12.22 | 5.20 | 10.28 | 8.33 | 8.84 |
| Putnam Retirement Advantage 2035 R6 | | | | | 8.69 | 8.91 |
| Voya Target Retirement 2035 R6 | 10.82 | 12.53 | 4.44 | 9.57 | 7.72 | 7.97 |
| *Morningstar Lifetime Mod 2035 TR USD* | 11.14 | 11.85 | 3.97 | 8.41 | 6.04 | 6.57 |
| | | | | | |
| **US CIT Target-Date 2040** | | | | | |
| American Century One Choice 2040 XII | 10.53 | 11.52 | 4.52 | 8.74 | 6.63 | 6.32 |
| BlackRock LifePath® Dyn 2040 K | 11.91 | 13.56 | 5.22 | 10.72 | 8.57 | 9.13 |
| Fidelity Freedom 2040 K6 | 12.57 | 14.20 | 5.39 | 11.37 | 9.14 | 9.83 |
| MoA Clear Passage 2040 Fund | 11.20 | 12.79 | 5.65 | 11.19 | 9.36 | 10.03 |
| Putnam Retirement Advantage 2040 R6 | | | | | 9.71 | 10.14 |
| Voya Target Retirement 2040 R6 | 11.42 | 13.45 | 5.01 | 10.67 | 8.83 | 9.20 |
| *Morningstar Lifetime Mod 2040 TR USD* | 11.48 | 12.42 | 4.36 | 9.30 | 6.98 | 7.89 |
| | | | | | |
| **US CIT Target-Date 2045** | | | | | |
| American Century One Choice 2045 XII | 11.26 | 12.36 | 4.91 | 9.42 | 7.20 | 6.81 |
| BlackRock LifePath® Dyn 2045 K | 12.14 | 14.05 | 5.38 | 11.36 | 9.39 | 10.17 |
| Fidelity Freedom 2045 K6 | 12.58 | 14.23 | 5.38 | 11.49 | 9.39 | 10.41 |
| MoA Clear Passage 2045 Fund | 11.19 | 12.91 | 5.66 | 11.43 | 9.65 | 10.49 |
| Putnam Retirement Advantage 2045 R6 | | | | | 10.33 | 10.96 |
| Voya Target Retirement 2045 R6 | 11.63 | 13.93 | 5.29 | 11.33 | 9.50 | 9.98 |
| *Morningstar Lifetime Mod 2045 TR USD* | 11.61 | 12.70 | 4.58 | 9.84 | 7.63 | 8.85 |
| | | | | | |
| **US CIT Target-Date 2050** | | | | | |
| American Century One Choice 2050 XII | 11.86 | 13.12 | 5.32 | 10.13 | 7.84 | 7.36 |
| BlackRock LifePath® Dyn 2050 K | 12.32 | 14.32 | 5.28 | 11.47 | 9.67 | 10.66 |
| Fidelity Freedom 2050 K6 | 12.59 | 14.23 | 5.38 | 11.47 | 9.41 | 10.42 |
| MoA Clear Passage 2050 Fund | 11.18 | 12.93 | 5.62 | 11.55 | 9.85 | 10.69 |
| Putnam Retirement Advantage 2050 R6 | | | | | 10.99 | 11.57 |
| Voya Target Retirement 2050 R6 | 11.63 | 13.90 | 5.18 | 11.35 | 9.55 | 10.17 |
| *Morningstar Lifetime Mod 2050 TR USD* | 11.62 | 12.75 | 4.62 | 10.03 | 7.88 | 9.30 |
| | | | | | |
| **US CIT Target-Date 2055** | | | | | |
| American Century One Choice 2055 XII | 12.11 | 13.42 | 5.45 | 10.46 | 8.24 | 7.82 |

| Fund | | | | | | |
|---|---|---|---|---|---|---|
| BlackRock LifePath® Dyn 2055 K | 12.37 | 14.43 | 5.43 | 11.67 | 9.96 | 10.99 |
| Fidelity Freedom 2055 K6 | 12.56 | 14.21 | 5.40 | 11.47 | 9.40 | 10.42 |
| MoA Clear Passage 2055 Fund | | 13.03 | 5.67 | 11.65 | 10.03 | 10.86 |
| Putnam Retirement Advantage 2055 R6 | | | | | 11.63 | 12.18 |
| Voya Target Retirement 2055 R6 | 11.71 | 14.01 | 5.22 | 11.44 | 9.65 | 10.25 |
| *Morningstar Lifetime Mod 2055 TR USD* | 11.61 | 12.71 | 4.55 | 10.01 | 7.86 | 9.36 |
| | | | | | | |
| **US CIT Target-Date 2060** | | | | | | |
| American Century One Choice 2060 XII | 12.27 | 13.68 | 5.62 | 10.72 | 8.48 | 8.04 |
| BlackRock LifePath® Dyn 2060 K | | | 5.12 | 11.45 | 9.74 | 11.02 |
| Fidelity Freedom 2060 K6 | 12.55 | 14.18 | 5.38 | 11.46 | 9.39 | 10.41 |
| MoA Clear Passage 2060 Fund | | | | 11.84 | 10.21 | 11.05 |
| Putnam Retirement Advantage 2060 R6 | | | | | 12.17 | 12.71 |
| Voya Target Retirement 2060 R6 | 11.74 | 14.11 | 5.30 | 11.54 | 9.75 | 10.32 |
| *Morningstar Lifetime Mod 2060 TR USD* | 11.57 | 12.65 | 4.46 | 9.94 | 7.77 | 9.31 |
| | | | | | | |
| **US CIT Target-Date 2065+** | | | | | | |
| American Century One Choice 2065 XII | | | | | | 8.25 |
| BlackRock LifePath® Dyn 2065 K | | | | | 9.65 | 11.01 |
| Fidelity Freedom 2065 K6 | | | | | 9.37 | 10.41 |
| MoA Clear Passage 2065 Fund | | | | | | 11.18 |
| Putnam Retirement Advantage 2065 R6 | | | | | | 12.93 |
| Voya Target Retirement 2065 R6 | | | | | | 10.37 |
| *Morningstar Lifetime Mod 2065 TR USD* | 11.38 | 12.43 | 4.25 | 9.83 | 7.66 | 9.22 |

144.    Further, the tables above demonstrate that the American Century Target Date Series underperformed their Morningstar benchmarks on a 3-year and 5-year average basis since before the start of the Class Period and continued to underperform throughout the Class Period. More specifically, 2025-2065 vintages of the American Century TDFs underperformed against the Morningstar benchmarks on a 3-year average basis 58.70% during the Class Period. The 2030-2065 vintages of the American Century TDFs underperformed against the Morningstar benchmarks on a 5-year average basis 48.84% during the Class Period.

145.     Finally, Morningstar provided ratings for the 2030 to 2065 target dates. Regardless of any year/vintage over or under performing, a holistic view shows that Morningstar consistently rated every 2030 – 2065 vintage as having low or below average performance for the last 3, 5 and 10 year periods. Morningstar also rates funds with between one and five stars, with one being worst and five being best. With the exception of the 2030 vintage, which rated 2 stars, the rest had a one-star rating.

| American Century Investments One Choice Portfolio Investor Class | Three years | Five years | Ten Years | Overall |
|---|---|---|---|---|
| 2030[21] | 2 | 2 | 1 | 2 |
| 2035[22] | 1 | 1 | 1 | 1 |
| 2040[23] | 1 | 1 | 1 | 1 |
| 2045[24] | 1 | 1 | 1 | 1 |
| 2050[25] | 1 | 1 | 1 | 1 |
| 2055[26] | 1 | 1 | 1 | 1 |
| 2060[27] | 1 | 1 | 1 | 1 |
| 2065[28] | 1 | 1 | N/A | 1 |

146.     An overwhelming body of information available at every point in time would have warned Defendant of the need to select a different target date series. Unfortunately for Plan participants, Defendant continuously failed to investigate and/or act on this information.

**VII.    DEFENDANT COMMITTED A PROHIBITED TRANSACTION RESULTING IN EXCESSIVE RKA COSTS FOR THE PLAN AND ITS PARTICIPANTS**

---

[21] https://fundresearch.fidelity.com/mutual-funds/ratings/02507F654
[22] https://fundresearch.fidelity.com/mutual-funds/ratings/02507F886
[23] https://fundresearch.fidelity.com/mutual-funds/ratings/02507F613
[24] https://fundresearch.fidelity.com/mutual-funds/ratings/02507F845
[25] https://fundresearch.fidelity.com/mutual-funds/ratings/02507F563
[26] https://fundresearch.fidelity.com/mutual-funds/ratings/02507F381
[27] https://fundresearch.fidelity.com/mutual-funds/ratings/02507F191
[28] https://fundresearch.fidelity.com/mutual-funds/ratings/02507J862

147. During the Class Period, Defendant entered into a contract with Principal to provide among other things, RKA services. However, such engagements and subsequent services provided by Principal constitute prohibited transactions under ERISA.

148. 29 U.S.C. §§ 1106(a)(1)(C) provides that "(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect … (C) furnishing of goods, services, or facilities between the plan and a party in interest."

149. Here, Principal was a party in interest to the Plan as it was receiving compensation for RKA services, as well as compensation from trustee services from the Plan. Principal was also a party in interest as it was receiving compensation for managing/maintaining the Plan's investments in Principal's funds.

## A. Costs for Recordkeeping Services Vary Little for Plans with a Substantial Number of Participants

150. The term "recordkeeping" is a catchall term for the suite of administrative services typically provided to a defined contribution plan by the plan's "recordkeeper." Recordkeeping and administrative services fees are one and the same and the terms are used synonymously herein and referred to as RKA.

151. There are two essential recordkeeping services provided by all national recordkeepers for large plans with substantial bargaining power (like the Plan). First, an overall suite of recordkeeping services is provided to large plans as part of a "bundled" fee for a buffet style level of service (meaning that the services are provided, in retirement industry parlance, on an "all-you-can-eat" basis), including, but not limited to, the following services:

      A.    Basic account recordkeeping (e.g. demographic, source, investment and vesting records);

B. Multi-channel participant and plan sponsor access (e.g. phone, web);

C. Daily participant transaction accounting (e.g., purchases, redemptions, exchanges);

D. Payroll service (e.g. hardships, in-service withdrawals, termination distributions);

E. Participant tax reporting services (e.g., IRS Form 1099-R);

F. Participant confirmations, statements, and standard notices;

G. Plan-level reporting and annual financial package (excluding IRS Form 5500);

H. Participant education (e.g. newsletters, web articles, standard communication materials);

I. Plan consulting (e.g., preapproved document services, operational materials);

J. Plan consulting (e.g. preapproved document services, operational compliance support).

152. This suite of essential recordkeeping services can be referred to as "Bundled" services. These services are offered by all recordkeepers for one price (typically at a per capita price), regardless of the services chosen or utilized by the plan. As explained in more detail below, the services chosen by a large plan do not affect the amount charged by recordkeepers for such basic and fungible services.

153. The second type of essential recordkeeping services, hereafter referred to as "A La Carte" services, provided by all national recordkeepers, often has separate, additional fees based on the conduct of individual participants and the usage of the services by individual participants. These fees are distinct from the bundled arrangement described above to ensure that one participant

is not forced to help another cover the cost of, for example, taking a loan from their plan account balance. These A La Carte services typically include, but are not limited to, the following:

    a.    Loan processing;

    b.    Brokerage services/account maintenance (if offered by the plan);

    c.    Distribution services; and

    d.    Processing of qualified domestic relations orders.

154.    All national recordkeepers have the capability to provide all of the aforementioned recordkeeping services at very little cost to defined contribution plans, including those much smaller than the Plan. In fact, several of the services, such as managed account services, self-directed brokerage, Qualified Domestic Relations Order processing, and loan processing are often a profit center for recordkeepers.

155.    In general, the level, number and character of participant services provided by the recordkeeper have minimal impact upon the costs of providing recordkeeping. That is because building and maintaining a robust, intuitive, web-based participant interactive 401(k) account system incurs large fixed costs. Each additional participant placed on the system causes a minimal incremental/marginal cost to the record keeper ***notwithstanding the level, number and character of the services provided to that additional participant***.

156.    Recordkeepers such as Principal, among others, invest in technology infrastructure necessary to provide recordkeeping and transaction services to all clients (e.g., website, call center, and some print services).

157.    Accordingly, a plan sponsor or fiduciary has the leverage to negotiate favorable rates given that costs of implementation do not change for the service provider.

## B. The Plan's Recordkeeping Fees to Principal were Excessive

158. As demonstrated in the tables below, the Plan's participants were saddled with above-market administrative and recordkeeping fees during the Class Period.

159. The Plan's per participant RKA fees were as follows:

| Plan Year | Recordkeeper | Participants | Total RKA Reported | PP$ |
|---|---|---|---|---|
| 2020 | Principal | 6,094 | $555,726.00 | $91.19 |
| 2021 | Principal | 6,871 | $571,004.00 | $83.10 |
| 2022 | Principal | 7,785 | $499,616.00 | $64.18 |
| 2023 | Principal | 8,175 | $555,160.00 | $67.91 |
| 2024 | Principal | 8,620 | $619,102.00 | $71.82 |

160. Looking at recordkeeping costs for plans similar in size to the assets and participant size of the Plan during the Class Period shows that the Plan was paying higher recordkeeping fees than its peers.

| Plan Year | Plan Name | Recordkeeper | Assets Under Management | Participants | Schedule C Codes | Cost Per Participant[29] |
|---|---|---|---|---|---|---|
| 2020 | Johnson Brothers 401(k) Plan | Wells Fargo | $236,760,533 | 3,655 | 15 21 37 50 62 64 | $49 |
| 2020 | Refinitiv 401(k) Savings Plan | Voya | $1,013,607,858 | 3,795 | 37 64 | $38 |
| 2020 | Evoqua Water Technologies LLC Savings Plan | Schwab | $507,272,363 | 3,940 | 15 50 64 | $54 |
| 2020 | Morningstar, Inc. 401(k) Plan | Schwab | $681,973,580 | 3,950 | 15 50 64 | $47 |
| 2020 | Ceridian Savings and Investment Plan | T.Rowe Price | $591,489,462 | 3,200 | 15 21 25 28 37 38 49 50 52 59 62 64 65 99 | $48 |
| 2020 | Optumcare Management, LLC 401(k) Retirement Savings Plan | Fidelity | $938,281,291 | 9,832 | 37 60 64 65 71 | $19 |
| **2020** | **Lockton 401(k) Plan** | **Principal** | **$972,076,615** | **6,094** | **13 37 50 64** | **$91** |

---

[29] Unless otherwise noted, these fees are taken from the Form 5500s.

| | | | | | | |
|---|---|---|---|---|---|---|
| 2021 | Meriter 401(k) Plan | Fidelity | $300,507,455 | 4,155 | 37 60 64 65 | $45 |
| 2021 | Hallmark Affiliates Employee Savings Plan | Great-West | $459,563,415 | 3,286 | 15 37 50 64 | $51 |
| 2021 | Enloe Medical Center Defined Contribution Retirement Plan | Fidelity | $219,896,932 | 3,677 | 60 64 65 | $43 |
| 2021 | Protective Life Corporation 401(k) Plan | Fidelity | $602,700,167 | 4,026 | 37 60 64 65 | $58 |
| 2021 | Evoqua Water Technologies LLC Savings Plan | Schwab | $558,545,953 | 4,000 | 15 50 64 | $56 |
| 2021 | Crowe LLP Retirement Plan | Vanguard | $1,021,351,197 | 6,840 | 15 33 37 99 | $27 |
| **2021** | **Lockton 401(k) Plan** | **Principal** | **$1,130,437,476** | **6,871** | **13 37 50 64** | **$83** |
| | | | | | | |
| 2022 | Hilti Retirement Savings Plan | Prudential | $523,145,772 | 4,424 | 12 13 15 27 37 50 64 | $29 |
| 2022 | Evoqua Water Technologies LLC Savings Plan | Schwab | $483,045,970 | 4,506 | 15 50 64 | $55 |
| 2022 | EPAM Systems, Inc. 401(k) Plan | Fidelity | $258,731,389 | 4,310 | 37 60 64 65 71 | $60 |
| 2022 | Clark Group Retirement Plan | Vanguard | $768,749,338 | 4,354 | 15 16 25 37 52 | $57 |
| 2022 | Modine Manufacturing Company 401(k) Retirement Plan | Principal Life | $301,865,642 | 4,230 | 13 15 37 50 64 | $50 |
| 2022 | Crowe LLP Retirement Plan | Vanguard | $992,984,046 | 7,584 | 15 33 37 99 | $26 |
| 2022 | Vista Outdoor Inc. 401(k) Plan | Vanguard | $440,444,788 | 7,295 | 15 16 33 37 38 99 | $33 |
| **2022** | **Lockton 401(k) Plan** | **Principal** | **$997,829,167** | **7,785** | **13 37 50 64** | **$64** |
| | | | | | | |
| 2023 | Omnicell, Inc. 401(k) Plan | Fidelity | $361,735,651 | 4,067 | 37 60 64 65 | $52 |
| 2023 | Axalta Coating Systems, LLC Retirement Savings Plan | Vanguard | $527,986,318 | 3,995 | 15 16 25 37 52 99 | $52 |
| 2023 | Marelli North America, Inc. 401(k) Retirement Plan | Fidelity | $203,248,425 | 3,043 | 37 60 64 65 71 | $39 |
| 2023 | BRFHH Retirement Plan | Vanguard | $150,012,652 | 4,017 | 15 16 25 37 52 | $56 |

| Year | Plan | Recordkeeper | Assets | Participants | | Fee |
|------|------|------|------|------|------|------|
| 2023 | Triniplus Retirement Plan | Transamerica | $388,641,880 | 3,795 | 12 15 28 37 38 50 54 59 61 62 63 64 65 | $51 |
| 2023 | Crowe LLP Retirement Plan | Vanguard | $992,984,046 | 7,992 | 15 33 37 99 | $26 |
| **2023** | **Lockton 401(k) Plan** | **Principal** | **$1,204,144,442** | **8,175** | **13 37 50 64** | **$68** |
| | | | | | | |
| 2024 | Maplebear Inc. d/b/a Instacart Retirement Plan | Fidelity | $297,040,898 | 3,473 | 37 60 64 65 71 | $31 |
| 2024 | LG Electronics Retirement Plan | Fidelity | $450,379,425 | 3,655 | 37 60 64 65 71 | $55 |
| 2024 | Muckleshoot Retirement Plan | Fidelity | $260,032,995 | 4,486 | 37 60 64 65 | $59 |
| 2024 | Steel Partners 401(k) Savings Plan | Fidelity | $287,412,653 | 3,074 | 37 60 64 65 | $35 |
| 2024 | Bose Employees' Retirement Savings 401(k) Plan | Empower | $680,910,797 | 3,848 | 15 37 50 64 | $29 |
| 2024 | Crowe LLP Retirement Plan | Vanguard | $1,265,316,102 | 7,934 | 15 33 37 99 | $21 |
| **2024** | **Lockton 401(k) Plan** | **Principal** | **$1,397,582,709** | **8,620** | **13 37 50 64** | **$72** |

161.    The above table demonstrates that for similar plans, regarding assets and participants, the Plan had one of the highest recordkeeping fees during the Class Period.

162.    The Plan's $76 average per participant fee from 2020 to 2024 is almost double the average fee of $44 per participant from 2020 to 2024 for the thirty-one (31) plans listed above.

163.    This vast discrepancy between the Plan's RKA fees and comparable plans existed for all years from 2020 through 2024. Indeed, the figures in the above chart are just an example of the Plan's excessive RKA fees during the Class Period.

164.    The Plan should have been able to obtain per participant recordkeeping fees of no more than $44 per participant, and likely even less. This fee is consistent with the average recordkeeping fees paid by similar plans in the country as demonstrated in the allegations above.

165. Because Principal was a party-in-interest, the Plan's fiduciaries should have taken the additional sources of income paid to Principal into consideration to reduce the excessive RKA fees paid to Principal.

166. For the foregoing reasons, Defendant's violation of ERISA's prohibited transactions resulted in Plan participants paying excessive RKA fees to Principal.

## COUNT I
### Breaches of Fiduciary Duty of Prudence

167. Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

168. At all relevant times, the Company ("Prudence Defendant") was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that it exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets.

169. As a fiduciary of the Plan, the Defendant was subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a). These fiduciary duties included managing the assets of the Plan for the sole and exclusive benefit of Plan participants and beneficiaries, and acting with the care, skill, diligence, and prudence under the circumstances that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

170. The Prudence Defendant breached these fiduciary duties as discussed throughout this Complaint. Prudence Defendant did not make decisions regarding the Plan's investment lineup based solely on the merits of each investment and what was in the interest of Plan participants. Instead, the Prudence Defendant selected and retained investment options in the Plan despite the poor performance of the funds in relation to other comparable investments.

46

171. As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan suffered millions of dollars of losses due to lower net investment returns. Had Defendant complied with its fiduciary obligations, the Plan would not have suffered these losses, and Plan participants would have had more money available to them for their retirement.

172. Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), the Prudence Defendant is liable to restore to the Plan all losses caused by its breaches of fiduciary duties, and also must restore any profits resulting from such breaches. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief for Defendant's breaches as set forth in their Prayer for Relief.

173. The Prudence Defendant knowingly participated in each breach, knowing that such acts were a breach, and failed to make any reasonable and timely effort under the circumstances to remedy the breaches.

## COUNT II
### Prohibited Transaction

174. Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

175. Under ERISA, a plan fiduciary may not "cause the plan to engage in a transaction" if the fiduciary "knows or should know that such transaction constitutes a direct or indirect" (i) exchange of any property between the plan and a party in interest, or (ii) the furnishing of services between the plan and a party in interest. 29 U.S.C. § 1106(a)(1)(C).

176. ERISA § 3(14), 29 U.S.C. § 1002(14), defines a "party in interest" to include (A) "any fiduciary . . . of such employee benefit plan;" (B) "a person providing services to such plan;" (C) "an employer any of whose employees are covered by such plan," and "(H) any employee, officer, or director of such employer."

47

177. Defendant's decision to agree to pay excessive fees to Principal as recordkeeper during the Class Period for the Plan amounted to a direct or indirect "furnishing of goods, services, or facilities between the plan and a party in interest" pursuant to ERISA § 406(a)(1)(C) and the "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan" pursuant to ERISA § 406(a)(1)(D).

178. Defendant caused the Plan to engage in the transactions with actual or constructive knowledge that the transactions constituted a direct or indirect exchange of property between the Plan and Principal.

179. Defendant also caused the Plan to engage in the transactions with actual or constructive knowledge that the transactions constituted a direct or indirect furnishing of services between Principal and the Plan.

180. Pursuant to 29 U.S.C. § 1109(a) and 1132(a)(2), Defendant, as a fiduciary to the Plan, is liable to restore to the Plan all losses caused by its violations of ERISA §§ 406(a)(1)(C) and (D).

<u>**PRAYER FOR RELIEF**</u>

136. WHEREFORE, Plaintiffs pray that judgment be entered against Defendant on all claims and requests that the Court awards the following relief:

A. A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative, Rule 23(b)(2) of the Federal Rules of Civil Procedure;

B. Designation of Plaintiffs as Class Representatives and designation of Plaintiffs' counsel as Class Counsel;

C. A Declaration that the Defendant has breached its fiduciary duties under ERISA;

48

D. An Order compelling the Defendant to make good to the Plan all losses to the Plan resulting from Defendant's breaches of its fiduciary duties, including losses to the Plan resulting from imprudent investment of the Plan's assets, and to restore to the Plan all profits the Defendant made through use of the Plan's assets, and to restore to the Plan all profits which the participants would have made if the Defendant had fulfilled its fiduciary obligations;

E. An order requiring the Company to disgorge all profits received from, or in respect of, the Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of a constructive trust, as necessary to effectuate said relief, and to prevent the Defendant's unjust enrichment;

F. Actual damages in the amount of any losses the Plan suffered, to be allocated among the participants' individual accounts in proportion to the accounts' losses;

G. An order enjoining Defendant from any further violations of its ERISA fiduciary responsibilities, obligations, and duties;

H. Other equitable relief to redress Defendant's illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary or fiduciaries to run the Plan and removal of Plan fiduciaries deemed to have breached their fiduciary duties;

I. An award of pre-judgment interest;

J. An award of costs pursuant to 29 U.S.C. § 1132(g);

K. An award of attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

L. Such other and further relief as the Court deems equitable and just.

Dated: March 6, 2026 Respectfully submitted,

*/s/ Kelly M. Spann*
**FORTMANSPANN, LLC**
Kelly M. Spann, Esquire
MO Attorney ID #73954
250 St. Catherine Street
Florissant, MO  63031
Email:  kms@fortmanlaw.com
Tele:  (314) 522-2312

Mark K. Gyandoh, Esquire
(*Pro Hac Vice* admission to be requested)
James A. Maro, Esquire
(*Pro Hac Vice* admission to be requested)
**CAPOZZI ADLER, P.C.**
312 Old Lancaster Road
Merion Station, PA 19066
Tel: (610) 890-0200
Email:  markg@capozziadler.com
        jamesm@capozziadler.com

*Counsel for Plaintiffs and the Putative Class*

50